(117 App. Div. 638)

## HAWLEY v. WICKER.

(Supreme Court, Appellate Division, First Department. February 15, 1907.)

1. FRAUD—REPRESENTATIONS—QUESTION FOR JURY.

Whether certain representations made by a seller of corporate stock with respect to the value of the assets of the company were statements as to matters of fact, or expressions of opinion only, and whether they were true, and whether they were material representations and made with the view of inducing the purchaser to act, were questions for the jury.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 23, Fraud, §§ 67–71.]

2. SAME.

Whether a certain representation made by a seller of corporate stock that another person was very anxious to buy the stock was a material representation, and whether it was true and was one of the inducements which led the purchaser to act, held, on the facts, to be a question for the jury.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 23, Fraud, §§ 67–71.]

Appeal from Trial Term, New York County.

Action by Edwin D. Hawley against Cassius M. Wicker on a promissory note. From a judgment for plaintiff, and from an order denying a new trial, defendant appeals. Reversed, and new trial ordered.

Argued before PATTERSON, P. J., and INGRAHAM, LAUGHLIN, CLARKE, and SCOTT, JJ.

Anson M. Beard, for appellant.
Arnold L. Davis, for respondent.

LAUGHLIN, J. On the 12th day of July, 1904, the plaintiff sold and delivered to the defendant 113 shares of the capital stock of the Merchants' Trust Company, a domestic banking corporation, for $25,-000, being a little more than $220 per share; the par value of each share being $100. The defendant paid to the plaintiff the sum of $22,600, on account of the purchase price of the stock, and gave a promissory note for $2,400, the balance. The action is brought to recover on the note, which was not paid. The defendant admitted making the note, but alleged that it was given in part payment for the stock, the purchase of which was induced by fraudulent representations made by the plaintiff with respect to the value of the assets of the corporation and of the stock, and interposed a counterclaim to recover the cash payment upon the same theory. At the close of the evidence the court dismissed the counterclaim and directed a verdict in favor of the plaintiff on the note. Counsel for the defendant duly excepted, and requested to go to the jury upon the evidence, which he claimed tended to establish the defense of fraud in the sale of the stock.

The plaintiff and the defendant had been personal friends for nearly 25 years. At the time of the sale of the stock the plaintiff was a

director, the president, and a member of the executive committee of the Merchants' Trust Company, and had been for more than a year. The evidence tends to show that he was entirely familiar with the nature of the assets of the company and with its financial condition. The company had invested in bonds of the Hudson Valley Railroad Company, or had loaned that company to a considerable extent. The defendant was an engineer, and had been employed in connection with the Hudson Valley Railroad Company, and was familiar with its financial condition; but he had no knowledge or information with respect to the financial condition of the Merchants' Trust Company, or the value of any of the other assets, excepting the information imparted to him by the plaintiff and knowledge that it was having some difficulty with the state superintendent of banking. According to the testimony of the defendant, he contemplated investing some money in the Steel Car Company and consulted the plaintiff with respect thereto, whereupon the plaintiff suggested that the defendant buy his Merchants' Trust Company stock instead, and represented in substance, among other things, that the company had had trials and tribulations owing to the "Richmond properties" which it had held, and which had subjected it to criticism and lowered the market value of its stock, but that it had disposed of these properties, "except a little," to Frank Gould, which would make the balance of that property held by the company valuable; that the stock and surplus of the company had not been infringed upon, and it was all intact; that all the securities held by the company "outside of possibly the Hudson Valley, which was still in some trouble," were "good and worth their face value—all worth their real value"; that they were worth the book value, and that no loss upon the Hudson Valley securities would use up the surplus; that Mr. George W. Young, either for himself personally or for the United States Mortgage & Trust Company, of which he was president, was very anxious to buy the plaintiff's stock, but that plaintiff preferred to sell it to defendant; and that the plaintiff, on being requested so to do, refused to permit an inspection or examination of the books of the company, upon the ground that it would be a breach of trust, and that he would be subject to criticism for thus allowing an examination of the books which would show the valuable information he had as to the financial condition of the company, with a view to selling his own stock at a profit. The plaintiff gave the defendant a statement issued in the usual course of its business by the company on the 30th day of June, 1904, showing the total value of the assets as carried on the books of the company on that day, and its liabilities. This statement showed that the capital stock was $500,000, that the surplus was $1,000,000, and that the assets equaled the liabilities, including the capital stock and surplus and $201,166.99 undivided profits. The defendant further testified that he could have obtained the stock in the market for $200 per share, but that he paid the plaintiff more, because he was a friend, and, being an officer of the company, was in a position to know the facts, which he had stated to the defendant, all of which defendant believed and relied upon. He was doubtless influenced, also, by the plaintiff's offer to have him elected a director of the company.

After selling the stock to the defendant, the plaintiff resigned as an officer and director of the company, and the defendant was elected to succeed him as director, and was also made vice president of the company. Within three days thereafter the defendant obtained information which led him to believe that many of the representations made to him by the plaintiff, and upon which he had relied in purchasing the stock, were untrue, and tendered back the stock and demanded the consideration paid, which was refused. It appears that during many months prior to the sale of the stock the plaintiff, who was an operator on Wall Street and thoroughly familiar with the stock market, and other officers of the company, were endeavoring, under pressure from the state superintendent of banking, to sell many of the securities held by it, other than the Hudson Valley Railroad securities, and that no market could be found therefor; that long prior to the sale, Mr. Young, with a view to purchasing for the United States Mortgage & Trust Company, had obtained leave to have the books of the Merchants' Trust Company examined by an expert, and had received the report; that Mr. Young had not sought the purchase of the plaintiff's stock, and that, in the event that the United States Mortgage & Trust Company purchased a controlling interest, the plaintiff intended to retain his stock, and that he had not, after the report of the expert was made, heard from Mr. Young or inquired whether his plan to purchase such controlling interest for his company had been abandoned; that in the month of May thereafter the Merchants' Trust Company went into the hands of a receiver, and its assets were sold by the receiver during the succeeding six months, and resulted in a loss, not only of the entire surplus stock and undivided profits, but of the impairment of at least one-half the face value of the capital stock, and that at the time the company went into the hands of the receiver it held all of the securities which it held at the time of the sale of the stock to the defendant, and in the same condition, if not a more favorable condition, owing to the fact that there was then a market for many of the securities for which none had been previously found. The sale of the assets by the receiver was presumably made at public auction under the direction of the court, and the amount realized thereon was, in the circumstances, some evidence of the value of the assets at the time the plaintiff sold the stock to the defendant.

It is contended by the learned counsel for the respondent that the representations made by the plaintiff with respect to the value of the assets of the company were mere expressions of opinion, and that they were true. We are of opinion, however, that the jury would have been justified in finding that they were intended as statements of facts of which the plaintiff had personal knowledge; that they were untrue, and were fraudulently made, with a view to inducing the defendant to purchase the stock; and that he was induced thereby to purchase it. It can neither be maintained as matter of law that they were mere expressions of opinion, nor that they were not material representations. Moreover, the jury would have been justified in finding that the representation concerning Mr. Young, who was a prominent financier, was a material representation; that it was false; and that it was one of the inducements which led the defendant to purchase the

stock. It follows, therefore, that the court erred in dismissing the counterclaim and directing a verdict for the plaintiff.

The judgment and order should be reversed, and a new trial granted, with costs to appellant to abide the event. All concur.